UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-10737-GAO

GARY S. LOVEJOY,
Plaintiff,

v.

PAINTERS & ALLIED TRADES DISTRICT COUNCIL NO. 35 PENSION AND ANNUITY
FUND, SHARON P. SAGANEY in her capacity as Fund Administrator, BOARD OF
TRUSTEES OF THE PAINTERS & ALLIED TRADES DISTRICT COUNCIL NO. 35
PENSION AND ANNUITY FUND and PAINTERS & ALLIED TRADES DISTRICT
COUNCIL NO. 35 PENSION PLAN,
Defendants.

OPINION AND ORDER
March 10, 2011

O'TOOLE, D.J.

On May 6, 2009, the plaintiff, Gary S. Lovejoy, filed a complaint under the Employee Retirement Income Security Act ("ERISA") against the defendants, Painters and Allied Trades District Council No. 35 Pension and Annuity Fund (the "Fund"), Sharon P. Saganey in her capacity as Fund Administrator, the Board of Trustees of the Painters and Allied Trades District Council No. 35 Pension and Annuity Fund (the "Trustees"), and Painters and Allied Trades District Council No. 35 Pension Plan (the "Plan"), alleging that the defendants improperly denied his claim for a total disability pension (Count I) and breached their fiduciary duty (Count II). He is also asking for attorneys' fees and costs (Count III). Before the Court are the parties' cross-motions for summary judgment.

**I.    Background**

On January 26, 2006, Lovejoy, a participant in the Plan, was working as a glazier and was injured when attempting to move a heavy piece of glass for his employer. It appears that

after some time away from work following the accident, he returned to light duty status. He consulted his primary care physician, who referred him to an orthopedic specialist. His medical history indicates he had arthroscopic surgery on his right shoulder, followed by physical therapy.

In August 2007, Lovejoy contacted Saganey to apply for a total disability pension. Saganey sent him an application form explaining to him that he should return the application as soon as possible, along with evidence of his having received approval for Social Security Disability payments. Saganey informed Lovejoy he would not be eligible for benefits until six months after the date of the injury or until one month after the submission of his application.

On February 27, 2008, Lovejoy submitted his application for disability benefits, describing the nature of his disability as "back, neck, shoulder, stomach." (Admin. R. Ex. A-4 at 4 [hereinafter R.].)

At the Fund's request, a Dr. Hamedani at New England Baptist Hospital conducted an independent medical examination of Lovejoy on May 8, 2008. In an addendum to his initial report filed after the examination, Dr. Hamedani concluded that "the patient is total [sic] and permanent [sic] disabled from the painting industry" but that "the patient is not total [sic] and permanent [sic] disabled from any gainful employment." (Id. Ex. A-10 at 1.) Based on this report, on June 24, 2008, Saganey awarded Lovejoy partial disability benefits instead of the total disability benefits for which he had applied. Saganey advised Lovejoy of his right to appeal, including his right to "submit written comments, documents, records, and other information relating to the claims." (Id. Ex. A-8 at 2.)

On June 30, 2008, Lovejoy appealed the denial of his application, sending a letter to Saganey which stated in its entirety: "Please be advised, I wish to appeal the ruling on my pension, I wish to have a fair hearing and will show documents to the board as to my 100%

disability." (Id. Ex. A-13 at 1.) Lovejoy supplemented his appeal with a letter sent in July 2008 stating:

> I was told I needed surgery by 2 of the best Orthopedic Doctors in Boston at Mass General and Brigham and Womens [sic] Hospital. I have a problem with the disc's [sic] in my neck which is causing me great pain at times. My both arms have been getting weak and Both have numbness and tingling sensation at times. Between these injuries, and a host of other health Problems, Acid Reflux disease and the stress have taken a toll on me. I am currently seeing a psychiatrist My PCP and an orthopedic Dr. for my problems . . . I cannot return to any gainful employment as I cannot stand nor sit for any length of time, let alone lift anything of weight.

(Id. Ex. A-14 at 1.) Lovejoy enclosed several letters with this appeal supplement, including his SSA Disability Award Notice letter; a letter from his primary care physician, Dr. Holt, identifying thirteen medical problems, including depression; and a letter from his psychiatrist, Dr. Dancel, who wrote: "This is to certify that I am treating Mr. Lovejoy for a Major Depressive Disorder. He is currently on antidepressant medication and is unable to work due to the severity of his depression." (Id. Ex. A-15 at 1.)

On September 26, 2008, the Trustees deferred a decision on Lovejoy's appeal until Lovejoy underwent a second independent medical examination. On October 15, 2008, Lovejoy was examined by a Dr. Morley, who had been provided with the documents, including those from physicians, that Lovejoy had submitted in support of his appeal. Dr. Morley noted a "paucity of physical findings" after an examination of Lovejoy's neck. (Id. Ex. A-25 at 2.) He noted complete range of motion in the neck with no muscle spasm. He also noted that Lovejoy had a history of depression, as well as problems with gastroesophageal reflux disease ("GERD"). (The materials submitted indicated that Lovejoy was taking various prescription medications for the several conditions.) Dr. Morley opined that Lovejoy was "totally and permanently disabled from the glazing industry, but is capable of full-time, gainful employment," provided that he

3

avoid lifting out to the side or overhead greater than twenty pounds and limit lifting below the shoulder level to forty pounds. (Id. Ex. A-25 at 3.)

On November 14, 2009, after reviewing Dr. Morley's report, the Trustees voted to deny Lovejoy's request for a total disability pension and to maintain him on a partial disability pension. This suit followed.

## II.     Reasonableness of Trustees' Decision

As noted, the parties have cross-moved for summary judgment. In the ERISA context, "summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the 'non-moving party is not entitled to the usual inferences in its favor.'" Bard v. Boston Shipping Ass'n, 471 F.3d 229, 235 (1st Cir. 2006) (citing Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir. 2005)).

In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 102 (1989), the Supreme Court set forth the standard of judicial review for decisions made by fund fiduciaries under ERISA, holding that such a challenge should be reviewed under a *de novo* standard unless the benefit plan gives the fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case the decision should be reviewed under an arbitrary and capricious standard. In the present case, the defendants argue and Lovejoy concedes that the Plan provides the Trustees with discretionary authority to interpret the Plan and, therefore, an arbitrary and capricious standard should be used.

Under an arbitrary and capricious standard, a decision by the Plan will be upheld if it was "within [the Trustees'] authority, reasoned, and supported by substantial evidence in the record." Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998) (internal quotation marks

omitted). The court's review of the benefit determination should be deferential, overturning determinations only if they are "unreasonable in light of the information available." Boardman v. Prudential Ins. Co., 337 F.3d 9, 16 (1st Cir. 2003).

Under this standard, the Trustees' decision was not unreasonable. The Plan provides, in relevant part, that if you are disabled and physically "unable to work at any gainful employment due to a bodily injury or sickness, you may be eligible to retire on a total disability pension" and that "if you are disabled and unable to work in an industry covered by the Painters and Allied Trades District Council No. 35 Collective Bargaining Agreement due to a bodily injury or sickness, you may be eligible to retire on a partial disability pension." (R. Ex. B at 17-18.) Two independent medical examinations resulted in two determinations that Lovejoy was partially disabled from the glazing industry, but not disabled from any gainful employment. Dr. Morley, the second of the two doctors to see Lovejoy, had all of the documentation Lovejoy had sent to Saganey to support his appeal, including a letter from Lovejoy's primary care physician identifying thirteen medical problems and noting that "because of his orthopedic issues and chronic pain, he will likely be unable to have gainful employment indefinitely." (Id. Ex. A-16 at 1.) That doctor did not relate Lovejoy's disability to either GERD or depression. Contrary to Lovejoy's argument here, Dr. Morley's examination covered Lovejoy's entire medical history, including his history of depression and GERD. (Id. Ex. A-25 at 1-3.) Dr. Morley's opinion, consistent with the prior opinion by Dr. Hamedani, provided a sound basis for the Trustees' decision to deny Lovejoy's appeal for total disability benefits. The Trustees' decision was not arbitrary or capricious and was supported by substantial evidence. See Doyle, 144 F.3d at 184.

Lovejoy makes several failing arguments calling into question the reasonableness of the Trustees' decision. First, he argues that the claim file and claim process were so irregular that

they kept him from being afforded a full and fair review as mandated by 29 U.S.C. § 1132(2). He argues that the claim file maintained by Saganey is missing several key medical documents and that, without the files, he must speculate as to what was ignored or misinterpreted by the examining doctors. The reports of Drs. Hamedani and Morley are in the file, however, and they summarize the records they reviewed, as well as the examinations they personally performed. It was neither arbitrary nor unfair for the Trustees to rely on the examiners' reports and opinions.

Lovejoy further argues that the Trustees wrongly failed to give him a hearing on his appeal, contrary to the mandate of the Plan. The defendants argue that Lovejoy was in fact "heard" on the issues. He submitted a written request to the Trustees explaining his appeal, as well as medical reports and notes in support of his appeal, all of which were available to the Trustees. Moreover, the language in section 6.04(b)(6)-(8) of the Plan is ambiguous as to whether or not a hearing truly is mandated or not, as the language alternates between the terms "review" and "hearing." In Diaz v. Seafarers International Union, 13 F.3d 454, 456 (1st Cir. 1994), the First Circuit found that, under an arbitrary and capricious standard, "a court will give Trustees considerable leeway to interpret and apply pension plan rules." It is reasonable to conclude that as long as the appellant's case is given a meaningful review, the Trustees have fulfilled their duties as laid out in the Plan. Even if the Trustees were wrong in not providing Lovejoy a face-to-face hearing, the default has not been shown to have been so substantial as to undercut the reasonableness of the ultimate decision, which was, after all, based on the concurring opinions of two separate examining physicians. It is doubtful that Lovejoy's personal appearance before the Trustees would have undercut the force of those opinions.

Lovejoy argues the defendants were required to conduct a full vocational assessment and, by not doing so, the Trustees abused their discretion and acted unreasonably. The state of the law

is otherwise. In Pari-Fasano v. ITT Hartford Life & Accident Insurance Co., 230 F.3d 415 (1st Cir. 2000), the First Circuit upheld a denial of total disability benefits to a participant without a vocational assessment. In that case, two different physicians examined the plaintiff and found that she had lifting restrictions of fifteen to twenty pounds due to degenerative cervical disc disease. Id. at 421. There, the court noted "no physician or other person proceeded to speculate or investigate and report on actual particular positions that would be appropriate for appellant to fill, but in light of the medical evidence and in conclusion of the reviewing physicians such a job-specific laundry list hardly seems necessary." Id. In the present case, Dr. Morley restricted Lovejoy from "lifting out to the side, or overhead greater than [twenty] pounds" and stated that he could lift below the shoulder level up to forty pounds. (R. Ex. A-25 at 3.) Dr. Morley's guidance made a vocational assessment unnecessary and highlights that the Trustees' decision falls within the range of reasonableness approved by the First Circuit.

Finally, Lovejoy argues that the Social Security Administration's finding of total disability supports his claim that the defendants' decision was arbitrary and capricious. However, a plan is not required to accept a Social Security adjudication of disability as binding on it where the definitions of disability are different. See Bard, 471 F.3d at 242; Pari-Fasano 230 F.3d at 419-20. Even under a *de novo* standard of review, the First Circuit has found that a favorable Social Security decision based upon multiple factors does not establish disability for back problems as claimed by the plaintiff. Orndorf, 404 F.3d at 510. The failure to follow the SSA's determination does not by itself mean that the Trustees' decision was arbitrary and capricious. And, as set forth above, that decision was supported by the record considered.

## III. Breach of Fiduciary Duty

The defendants argue that Lovejoy's claim for breach of fiduciary duty (Count II) is barred because he has an available statutory remedy. Both the Supreme Court and First Circuit have specifically said that only "those participants who are unable to avail themselves of other remedies" may bring individual claims for breach of fiduciary duty under ERISA. Mauser v. Raytheon Co. Pension Plan for Salaried Emps., 239 F.3d 51, 58 (1st Cir. 2001) (citing Varity Corp. v. Howe, 516 U.S. 489, 512-13 (1996)). In Turner v. Fallon Community Health Plan, Inc., 127 F.3d 196, 200 (1st Cir. 1997), the First Circuit held that a beneficiary denied benefits could not sue for damages under section 502(a)(3) since the claim was specifically addressed by section 502(a)(1) and further explained that beneficiaries may sue a plan for breach of fiduciary duty, but such suits are allowed only for equitable relief and, even then, only where Congress has failed to provide more specific relief. Because Lovejoy has a remedy under section 502(a)(1), his claim purportedly made under section 502(a)(3) is barred.

In any event, even if he had such a claim, for the same reasons that the Trustees' decision was not arbitrary and capricious, the decision was not a breach of their fiduciary obligations.

## IV. Conclusion

For the foregoing reasons, the plaintiff's Motion for Summary Judgment (dkt. no. 50) is DENIED and the defendants' Motion for Summary Judgment (dkt. no. 43) is GRANTED. Judgment shall enter in favor of the defendants.

It is SO ORDERED.

    /s/ George A. O'Toole, Jr.
United States District Judge